# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT DOUGLAS BLANCHARD,

        Defendant-Appellant.

UNPUBLISHED
February 27, 2018

No. 334167
St. Clair Circuit Court
LC No. 15-002322-FH

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right from his jury trial convictions of one count of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c), and two counts of first-degree home invasion, MCL 750.110a(2). As a fourth-offense habitual offender, MCL 769.12, defendant was sentenced to 35 to 75 years in prison for the first-degree CSC conviction and to 20 to 30 years in prison for each of the first-degree home invasion convictions. All three sentences were to be served consecutive to each other. We affirm in part but remand with respect to the consecutive nature of the sentences.

## I. BACKGROUND

The instant case arose from a sexual assault on July 25, 2016. That afternoon, defendant invited his neighbor, KZ, to sit with him on his patio and to have a beer. Sometime later, defendant's wife and KZ's infant son joined defendant and KZ on the patio. After having several beers, KZ asked defendant's wife to feed KZ's son because KZ was not feeling well and wanted to go back to her apartment to lie down. KZ told defendant's wife that she would leave her apartment door unlocked so that defendant's wife could bring the baby back when he was done feeding. Defendant was "in earshot" during KZ's conversation with defendant's wife.

Once back at her apartment, KZ laid down on the bed. In addition to consuming several beers, KZ had also taken the prescription medication, Klonopin. She testified that she had a headache, felt nauseous, and was in "a dream-like state." The next thing KZ remembered was defendant kissing her. According to KZ, she told defendant to stop, defendant said, "it's okay, it's me," and proceeded to assault her by biting her nipples, digitally penetrating her vagina, and putting his tongue on her vagina. KZ described the penetration as "rather hard, forceful[]" and stated that both the penetration and the biting caused her pain.

-1-

KZ testified that she told defendant to stop a second time, and he abruptly left the apartment after exclaiming "oh, shit." Just then, defendant's wife entered the bedroom with KZ's son and placed him on the bed next to KZ. According to KZ, after defendant's wife left the apartment, defendant returned and began kissing KZ. KZ testified that defendant left upon seeing that the baby was in the bed with her.

According to KZ, she and her fiancé confronted defendant about the encounter later that night and then called the police. KZ was examined by a forensic nurse the next day. The nurse testified that KZ complained to her of vaginal soreness following the incident.

At trial, defendant testified that his sexual conduct with KZ was consensual. He claimed that KZ's facial expressions and body language while drinking with him on the patio indicated that she wanted defendant to follow her to her apartment. Defendant further testified that he honored her wishes when she told him to stop touching her. The jury found defendant guilty of one count of CSC and two counts of first-degree home invasion, but found defendant not guilty of a second count of CSC.

The trial court sentenced defendant within the sentencing-guidelines range to 35 to 70 years imprisonment for the CSC conviction and 20 to 30 years imprisonment for each of the home invasion convictions. Relevant to this appeal, the trial court's sentencing-guidelines calculation was based in part upon its score of five points for Offense Variable (OV) 3. The trial court stated that it was ordering each of the three sentences to be served consecutive to each other under the discretion afforded it by the home-invasion statue, MCL 750.110a(8). The trial court also addressed defendant's Georgia state conviction for child molestation. The record indicates that defendant was given a split sentence of 25 years for this conviction, with the first 13 years to be spent in prison. Defendant was released from a Georgia prison in 2004, at which time he began serving 12 years of supervised probation which had been transferred to Michigan supervision by the time of the instant offenses. The trial court noted that it would find the instant sentences would be served consecutive to his Georgia sentence "because [defendant] was under a state's equivalent system of parole" at the time of the instant offenses. The trial court, however, subsequently ordered that the instant sentences be served consecutive to each other, but not to any other sentence. This appeal followed.

II. ANALYSIS

*Offense Variable 3.* On appeal, defendant first argues that the sentencing court erred in scoring OV 3 at five points. We review a trial court's factual findings at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Offense Variable 3, which relates to physical injury to a victim, should be scored with five points where "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). "'[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Here, KZ testified that defendant caused her physical pain by biting her nipples and digitally penetrating her vagina. A forensic examiner testified that KZ was still reporting vaginal soreness the day after the assault. A

preponderance of the evidence supports the trial court's conclusion that defendant caused the victim bodily injury not requiring medical attention. Defendant's argument is without merit.

*Consecutive Sentencing.* Defendant next argues that he is entitled to resentencing because the trial court erred in imposing consecutive sentences. A trial court may impose consecutive sentences only if authorized by statute. *People v Clark*, 315 Mich App 219, 224; 888 NW2d 309 (2016). This Court reviews any consecutive sentences for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

Defendant first argues that the trial court erred in using his Georgia conviction and sentence as grounds to impose consecutive sentences in the instant case. Defendant argues that the trial court erroneously concluded that his term of probation was the equivalent of parole in Michigan thereby subjecting him to consecutive sentencing under MCL 768.7a(2). Under MCL 768.7a(2), a defendant who is convicted of a felony while on parole must serve the remaining portion of the term of imprisonment for which he was paroled before he may begin to serve any time for the new offenses.

We need not answer the question of whether defendant's probation is the equivalent of parole in Michigan because the trial court did not impose consecutive sentences based upon defendant's probationary status. While the trial court indicated that it would determine that defendant's probation could serve as the basis for consecutive sentencing, the trial court's written sentencing order does not order defendant's Michigan sentences to be served consecutive to his Georgia sentence. See *People v Jones*, 203 Mich App 74, 82; 512 NW2d 26 (1993) (stating that the trial court speaks through its written orders, not its oral pronouncements). While the trial court did order defendant's instant sentences be served consecutive to each other, there is no indication in the record that this decision was based upon the trial court's belief that defendant was subject to the equivalent of Michigan parole at the time of the instant offense. Indeed, MCL 768.7a(2) only authorizes the trial court to order the instant offenses consecutive to a previous sentence, not to each other.

The trial court ordered defendant's instant sentences to be served consecutive to each other under the home invasion statute, MCL 750.110a(8). Under that statute, the trial court "may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." *Id*. Because defendant was convicted of two counts of first-degree home-invasion and one count of CSC from the same criminal transaction, the trial court had discretion to order that each sentence be served consecutive to the others.

Defendant argues that the consecutive sentences imposed in this case, which amount to a mandatory 75 years of imprisonment, are an abuse of discretion. Defendant also argues that his consecutive sentences violate the principle of proportionality and constitute cruel-and-unusual punishment given that he will likely serve the remainder of his life in prison.

Addressing defendant's proportionality argument first, we note that "a proportionality challenge to a given sentence must be based on the individual term imposed and not on the cumulative effect of multiple sentences." *Norfleet*, 317 Mich App at 663. In determining whether a sentence is disproportionate to the circumstances surrounding the offense and

offender, we review each sentence "on its own merits." *Id*. Here, each of defendant's sentences fell within the minimum sentencing-guidelines range. Sentences falling within the minimum sentencing guidelines range are presumptively proportionate, *People v Jackson*, 320 Mich App 514, 527; ___ NW2d ___ (2017), and are not reviewed for proportionality absent a scoring error or proof that the trial court relied on inaccurate information to calculate the sentence, see *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). Because defendant has not identified a scoring error or any inaccurate information affecting his sentence, defendant is not entitled to proportionality review.

Next, regarding defendant's argument that the trial court abused its discretion under MCL 750.110a(8) by imposing consecutive sentences, the trial court must articulate on the record the reasons for each consecutive sentence it imposes. See *Norfleet*, 317 Mich App at 654, 665. Because the trial court did not articulate on the record the reasons underlying its decision to impose three consecutive sentences in this case, we are unable to review the trial court's exercise of discretion. Accordingly, we remand to the trial court so that it may articulate on the record the reasoning underlying each consecutive sentence.

*Effective Assistance of Counsel.* Finally, defendant argues in a Standard-4[1] brief that he was denied the effective assistance of counsel at trial because defense counsel failed to present evidence regarding the victim's past sexual conduct and lifestyle. In particular, defendant argues that counsel should have presented evidence that KZ frequently wore revealing clothing, previously exposed herself to defendant and others, and indicated "through innuendo and body language" on the night of the assault that she was open to a sexual encounter.

To establish ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness under prevailing professional norms and (2) the result of the proceeding would have been different but for counsel's deficient performance. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). In proving deficient performance, the "defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Here, defendant has not overcome the presumption that defense counsel's decision not to present certain evidence regarding the victim's past conduct and lifestyle was sound trial strategy. To begin with, the evidence regarding KZ's past sexual conduct with others would be inadmissible under the rape-shield statute, MCL 750.520j(1). Moreover, defendant's assertion that defense counsel did not present evidence that KZ used body language to suggest to defendant that she was open to a sexual encounter is belied by the record. Indeed, defendant provided this testimony himself. Finally, to the extent that the remaining evidence of KZ's prior conduct was admissible, the presentation of this evidence could have been viewed by the jury as

---

[1] Supreme Court Administrative Order No. 2004–6, Standard 4.

"victim shaming." Given the limited relevance that the evidence presented, and given that defendant did testify regarding KZ's alleged conduct on the night in question, we conclude that counsel's decision to avoid this evidence was sound trial strategy. Defendant has failed to overcome the presumption that his counsel provided effective assistance.

## III. CONCLUSION

We affirm defendant's convictions and individual sentences. We remand for the limited purpose of having the trial court articulate on the record the reasoning underlying each consecutive sentence it imposed. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle